J. C. LAMM v. JUNE CRUMPLER AND T. R. HUMPHREY.

(Filed 7 June, 1951.)

**1. Pleadings § 16—**

A demurrer *ore tenus* for that the complaint fails to state a cause of action may be interposed at any time, even in the Supreme Court on appeal, or the Court may raise the question *ex mero motu*.

**2. Contracts § 7—**

A contract for the division of lands to be purchased at a judicial sale in consideration of the withdrawal of the raised bid on one tract by one of the parties and the agreement by both parties not to bid against the other as to the tracts in which they were interested, renders the contract contrary to public policy and void, and the agreement for the division of the lands may not be enforced by either.

APPEAL by defendants from *Carr, J.*, Resident Judge, Tenth Judicial District, of ALAMANCE.

Civil action to reform written contract pertaining to land, and for specific performance of contract as reformed for conveyance of land, heard in Superior Court upon demurrer to the complaint, and in Supreme Court on exception to ruling on said demurrer, and on demurrer *ore tenus* first entered in Supreme Court.

The complaint, at the outset, alleges that on 2 July, 1949, "the plaintiff and the defendant, June Crumpler, executed and delivered, under the circumstances hereinafter alleged, a certain written instrument, a copy

of which is attached hereto, marked Exhibit A, and made a part of the complaint."

Exhibit A is as follows:

"AGREEMENT

"NORTH CAROLINA

ALAMANCE COUNTY

"This agreement made and entered into this the 2nd day of July 1949 by and between J. C. Lamm, party of the first, and June Crumpler, party of the second part, all of Alamance County, North Carolina: WITNESSETH,

"(One)   For and in consideration of the sum of $10.00, to each of the parties by the other party paid, and the agreements hereinafter set forth; the receipt of which is hereby acknowledged, the parties agree as follows:

"(Two)   The party of the first part agrees to assign his bid on tract #35 of the R. G. Hornaday Estate to the party of the second part, and the said party of the first part does hereby assign his bid to the party of the second part.

"(Three)   The party of the second part hereby agrees to convey to the party of the first part all that certain land in said Tract #35 (Thirty Five) consisting of a strip of land one hundred and fifty feet wide (150 feet) and nine hundred and seventy-two and nine-tenths feet long carved from the Western boundary line of said tract #35 (thirty five), this strip of land runs along the entire Western boundary line of tract #35, at and for the purchase price of Fifteen Hundred Dollars ($1500.00).

"(Four)   It is agreed between both parties to this contract that the party of the first part has an option to purchase from the party of the second part an additional tract of land adjoining the described tract in the paragraph first above not to exceed two hundred and twenty-five (225) feet in width, and said tract to run the full depth of the property away from the Elon-Burlington Road, a line parallel with the Western boundary line of said tract #35 at the same price per acre as the remaining acres cost the party of the second part.

"(Five)   The party of the second part agrees to reassign to the party of the first part the bid or property for the money invested by the party of the second part in the property; and the party of the first part agrees not to bid or cause anyone else to bid upon lot #34 or #35.

"(Six)   The party of the second part agrees to dedicate a street fifty feet wide, at the request of the party of the first part, on the East boundary of the property described in paragraph three above; said street may be moved fifty-one feet East of said boundary line at the request of the party of the first part.

"In testimony whereof the parties have hereunto set their hands and seals, the day and year first above written.

"Wit.    BARNIE P. JONES          J. C. LAMM        (SEAL)
  Wit.    EUGENE A. GORDON         JUNE CRUMPLER     (SEAL)."

Plaintiff then makes these allegations:

"3. That prior to the execution of said paper writing marked Exhibit A, to-wit: on or about June 22, 1949, certain real estate situate in Alamance County known to the plaintiff and the defendants and referred to in said paper writing as 'the R. G. Hornaday Estate' had been offered for sale at public auction by Commissioners of the Superior Court of Alamance County. That at said sale, the defendants jointly became the highest bidders for Tract No. 34, and the plaintiff became the highest bidder for Tract No. 35. That in accord with the terms of the sale announced by said Commissioners at said sale, said sales remained open for receipt of increased bids for a period of ten (10) days and were subject to the approval of the Court.

"4. That the ten-day period within which increased bids were permitted to be filed with said Commissioners expired at midnight on July 2, 1949, and within the time limited for the receipt of increased bids the plaintiff deposited with said Commissioners an increased or upset bid on Tract No. 34 of said lands, which increased bid was withdrawn by the plaintiff under the circumstances and upon the conditions hereinafter alleged. . . .

"6. That on July 2, 1949, after the defendants had learned that the plaintiff had deposited an increased bid on Tract No. 34, the defendant Crumpler, acting for himself and his co-defendant, insisted that the plaintiff meet with him for the purpose of discussing and, if possible, reaching some mutually satisfactory agreement with respect to the purchase of said Tracts Nos. 34 and 35 of the R. G. Hornaday Estate. After much urging, the plaintiff finally agreed to confer with the defendant, June Crumpler, and did meet him at a late hour on the night of July 2, 1949. At that time, the defendant, June Crumpler, represented to the plaintiff that he and his co-defendant, T. R. Humphrey, were compelled to acquire Tract No. 34, and in all probability a small part of Tract No. 35 of said lands for their housing development and that unless they did acquire said property their plans would not be approved by the appropriate Housing Authority; that for those reasons they wanted to make an agreement with the plaintiff to the effect that if plaintiff would withdraw his upset bid on Tract No. 34 and assign his bid on Tract No. 35 to the defendant, June Crumpler, the defendants would agree to advance the purchase price of Tract No. 35 and upon receipt of the conveyance of said lands from

the Commissioners, the defendants would immediately reconvey to the plaintiff so much of the west side of Tract No. 35 as they were then sure they would not be required to own in order to obtain approval of their housing development (as detailed) . . . and that thereafter, as soon as their housing project was approved and it was thereby determined how much of the remainder of Tract No. 35 the defendants were required to own, or if it was ascertained that approval could not be obtained for said housing development, the defendant, June Crumpler, acting for himself and his co-defendant, would reconvey all of the remaining part of Tract No. 35 to the plaintiff at the cost to the defendants and without profit to them. The plaintiff was reluctant to enter into the proposed agreement, but after repeated assurances by the defendant Crumpler, (in accordance with the agreement, etc.), the plaintiff accepted said proposal.

"7. That at the time said understanding and agreement was entered into as aforesaid, it was approximately midnight and the time within which upset bids could be deposited with the Commissioners was about to expire, and while the parties and their attorneys were engaged in great haste in an effort to reduce the aforesaid agreement to writing, the plaintiff, in reliance on the foregoing understanding and agreement and at the request of the defendant, Crumpler, withdrew his deposit as an upset bid on Tract No. 34. That the paper writing, marked EXHIBIT A, was then and there signed by the plaintiff and the defendant, June Crumpler."

It is also alleged in the complaint that the Superior Court on 6 July, 1949, confirmed the sale of Tract No. 34 to defendants, and of Tract No. 35 to plaintiff, as the last and highest bidders therefor, respectively, and directed the Commissioners to execute and deliver deeds in accordance therewith upon payment of the purchase price; that under circumstances detailed,—proposed by defendant Crumpler, a temporary division of Tract No. 35 was made, and in accordance therewith the Commissioners executed deed to plaintiff for a part, and the Commissioners and plaintiff made deed to defendants for the remainder of said tract, all of which was done "subject to the right of plaintiff to receive a conveyance from them (defendants) of all the said land which was not actually used by the defendants in their housing development"; that only a small portion of Tract No. 35 was used by defendants in their housing development, leaving a specific part thereof (described in paragraph 14), for which plaintiff is entitled to deed from defendants, which they decline to make.

Then plaintiff alleges, in paragraph 12 of the complaint, the facts in respect of his plea of mutual mistake and error of draftsman on which he asks reformation of the contract, etc.

Thereupon, plaintiff prays judgment (1) that the paper writing, Exhibit A, be reformed to express the real contract as alleged; (2) that defendants hold title to land described in paragraph 14 as trustees, in

trust for benefit of plaintiff; (3) that defendants be required to perform the contract as so reformed; (4) that in event defendants are unable to specifically perform said contract plaintiff have monetary damages; and (5) that plaintiff have such other and further relief to which he may be entitled.

Defendants demurred to the complaint for that it does not state facts sufficient to constitute a cause of action either for reformation of the written instrument, or for specific performance, in that (1) the agreement was "made openly and in the presence of plaintiff and his counsel and defendant and his counsel, and . . . plaintiff's counsel assisted plaintiff in preparing said written agreement," and (2) "the real property asked by the plaintiff to be conveyed was in fact conveyed to the defendants by written deed executed and acknowledged and delivered to the defendants by the plaintiff," etc.

This demurrer was heard by the Resident Judge of the District, by consent, who overruled it, by order duly entered.

Defendants appeal therefrom to Supreme Court, and assign this ruling as error.

And, further, defendants enter, in this Court, demurrer *ore tenus* to the complaint for that it "shows upon its face, that the action was brought to reform a written contract, and to enforce the contract, as reformed, and it shows further upon its face that the contract was one that tended to chill bidding at a public sale, and the contract in the record uses these words: "and the party of the first part (Lamm) agrees not to bid or cause anyone else to bid upon lot No. 34 or No. 35," and in that "plaintiff, being a party to this agreement, will not be allowed to invoke the equitable jurisdiction of the court to compel the conveyance to him of the real estate which he claims by virtue of the contract."

*Brooks, McLendon, Brim & Holderness for plaintiff, appellee.*
*Allen & Allen and Young, Young & Gordon for defendants, appellants.*

WINBORNE, J.  The point raised by the demurrer *ore tenus* entered here for the first time, and debated orally, being well founded, takes precedence over, and renders it unnecessary to consider those questions of law arising upon the demurrer filed and heard in the trial court, and debated in the written briefs of the parties on this appeal.  Hence we have abbreviate statement of facts pertaining to those questions of law.

A defendant in a civil action in this State may demur *ore tenus* at any time in either the trial court, or in the Supreme Court, upon the ground that the complaint does not state a cause of action.  Indeed, the Court may raise the question *ex mero motu.  Garrison v. Williams,* 150

N.C. 674, 64 S.E. 783; *Snipes v. Monds,* 190 N.C. 190, 129 S.E. 413; *Watson v. Lee County,* 224 N.C. 508, 31 S.E. 2d 535.

Hence the demurrer *ore tenus* interposed in this Court, as hereinabove set forth, is timely.

"A sale at auction is a sale to the best bidder, its object, a fair price, its means, competition,—any agreement, therefore, to stifle competition is a fraud upon the principles on which the sale is founded. It . . . vitiates the contract between the parties, so that they can claim nothing from each other . . .," so declared this Court in opinion by *Henderson, C. J.,* in *Smith v. Greenlee,* 13 N.C. 126. This principle has been applied through subsequent years. See *Morehead v. Hunt,* 16 N.C. 35; *Bailey v. Morgan,* 44 N.C. 352; *McDowell v. Simms,* 45 N.C. 130; *Ingram v. Ingram,* 49 N.C. 188; *Whitaker v. Bond,* 63 N.C. 290; *Davis v. Keen,* 142 N.C. 496, 55 S.E. 359; *Henderson v. Polk,* 149 N.C. 104, 62 S.E. 904; *Owens v. Wright,* 161 N.C. 127, 76 S.E. 735.

In *Whitaker v. Bond, supra,* the relief sought by the complainant is specific performance of a contract relating to land. The 4th headnote epitomizes the opinion of the Court: "Where a bidder at auction offered one, who also proposed to bid, that if he would desist she would divide the land with him: *Held,* to be a fraud upon the vendor and so to violate the contract of purchase afterwards made by her as the only bidder."

Moreover, it is an established principle, universally applied in this jurisdiction to various factual situations, that an executory contract, the consideration of which is against good morals, or against public policy, or the laws of the State, or in fraud of the State, or of any third person, cannot be enforced in a court of justice. *Sharp v. Farmer,* 20 N.C. 255; *Blythe v. Lovinggood,* 24 N.C. 20; *Allison v. Norwood,* 44 N.C. 414; *Ramsay v. Woodard,* 48 N.C. 508; *Ingram v. Ingram, supra; Powell v. Inman,* 52 N.C. 28; *King v. Winants,* 71 N.C. 469; *S. c.,* 73 N.C. 563; *York v. Merritt,* 77 N.C. 213; *Covington v. Threadgill,* 88 N.C. 186; *Griffin v. Hasty,* 94 N.C. 438; *Culp v. Love,* 127 N.C. 457, 37 S.E. 476; *Owens v. Wright, supra; Marshall v. Dicks,* 175 N.C. 38, 94 S.E. 514; *Penland v. Wells,* 201 N.C. 173, 159 S.E. 423; *Shoe Co. v. Dept. Store,* 212 N.C. 75, 193 S.E. 9.

For instance, in *Blythe v. Lovinggood, supra,* it is held: "The law prohibits everything which is *contra bonos mores,* and, therefore, no contract which originates in an act contrary to the true principles of morality can be made the subject of complaint in the courts of justice."

In this case commissioners, appointed to sell land for the State at public auction, declared, as one of the conditions of the sales, that if the highest bidder did not comply with his contract, the next highest should have the land. Defendant, second to plaintiff in highest bids, gave to plaintiff note for $100 for failing to comply with his bid. The court held that

the transaction was fraudulent toward the State, and that such note was void, on the ground of its fraudulent consideration.

And in *Ingram v. Ingram, supra*, it is held that agreements between persons interested in an estate, the consideration of which is not to bid against each other at the administrator's sale, is against the public policy, and void.

In *Marshall v. Dicks, supra*, the Court through *Hoke, J.*, restated the principle in these words: "It is the fixed principle with us, and, so far as we are aware, of all courts administering the same system of laws, that when the parties are *in pari delicto* they will not enforce the obligations of an executory contract which is illegal or contrary to public policy or against good morals. Nor will they lend their aid to the acquisition or enjoyment of rights or claims which grow out of, and are necessarily dependent upon such a contract."

Applying these principles to the case in hand: It clearly appears from the complaint that the withdrawal of the raised bid, plaintiff had placed on tract No. 34, was a consideration for the contract plaintiff now seeks to reform, and then to enforce. Manifestly, its purpose, reflected in the contract itself, was to stifle bidding on both tracts Nos. 34 and 35. Thus, the withdrawal of the amount required to raise the bid was fraudulent towards those interested in the property bringing a fair price through fair competition. *Blythe v. Lovinggood, supra; King v. Winants, supra,* and other cases *supra*.

This makes the transaction contrary to public policy, and void. Therefore, plaintiff has no right to be aided, and enforced. This is so, not for the sake of defendant, but "it is founded in general principles of policy." *Holman v. Johnson,* 1 Cowp. 343, 98 Eng. Rep. Full Reprint 1120. To like import are: *Blythe v. Lovinggood, supra; Ingram v. Ingram, supra.*

If the plaintiff and defendants were to change sides, defendants would be confronted with same obstacle.

For reasons stated, the demurrer *ore tenus* is allowed.

Demurrer sustained.

Action dismissed.